THE MAGGIE S. HART

THE IVANHOE.

THE MATTHIAS.

THE MAGGIE S. HART *v.* THE IVANHOE AND THE MATTHIAS.

(*District Court, E. D. Pennsylvania.* April 26, 1889.)

1. COLLISION—DUTY OF STEAM-VESSELS.
    A vessel under steam must keep out of the way of a sailing vessel.
2. SAME—PILOT IN CHARGE OF TUG AND BARK—JOINT LIABILITY.
    A bark and a tug are both responsible for a collision with a sailing vessel when the pilot of the bark is in charge of both, and the collision occurs through his fault.

In Admiralty. Libel for collision.
*John F. Lewis,* for the Maggie S. Hart.
*Henry S. Edmunds,* for the Ivanhoe.
*Flanders & Pugh,* for the Matthias.

BUTLER, J. On the 12th of August, 1888, the schooner, laden with ice, was passing up Delaware bay against the tide. About half past 1 o'clock at night, while heading N. N. W., and near the Cross Ledge light, the respondents came into view (the Ivanhoe towing the bark,

astern) about three-fourths of a mile away, and near the center of the channel, passing down. Soon after, the vessels collided. The bark was injured, and now seeks to recover on this account.

It was the respondents' duty (being under steam) to keep off. Without explanation and excuse they would therefore be responsible. They have undertaken to explain, and in pursuance of this undertaking allege that the schooner rendered the collision unavoidable by suddenly changing head and running across their bows, when close at hand. The schooner did turn westward; she admits it. The important question, however, is, when did she turn? If it was at a time when the courses of the vessels were safe, and without being induced by some act of the respondents, she was in fault. If, however, she did it when the proximity of the vessels and their courses were such as to involve danger, and especially if in obedience to the respondents' signal and apparent change eastward, she is not blamable. The vital question, therefore, is, did she change at a safe distance when the courses involved no danger, and without invitation to do so? The testimony respecting this, as well as the respondents' movements, is conflicting. I will not discuss it, but simply state the conclusions reached by a careful examination. I believe the schooner did not change until the vessels were near together, on courses which threatened collision; that the situation was dangerous; that the change was induced by this danger, the tug's signal, and a momentary shutting out of her green light. I believe the vessels were at the time approaching nearly head on, and that the schooner may have been misled by the tug's signal, and a slight temporary change of head, (such as might readily occur without change of wheel,) into believing she had turned eastward. It is incredible that the schooner would turn as she did, and start deliberately across the respondents' bows, as alleged, when the vessels were so near together that collision must thus be rendered inevitable. The respondents seek to meet this difficulty by suggesting that her lookout was defective, and the tug's approach unseen. This suggestion, however, finds no warrant in the evidence. The respondents were seen, and had been for some time. I am satisfied the schooner kept her course until so near the respondents that a change became apparently necessary, to avoid danger, and that she then turned westward in the hope of escaping, and in the belief that the respondents were turning the other way. It is possible she would have fared better by turning eastward; she, however, did not think so; and appearances doubtless justified her. She had every motive to do the best she could. If mistaken, she is not blamable. The respondents should not have placed her in danger, or in such position as to inspire and justify alarm. It is no answer to say that the collision might not have occurred if she had not changed her course. This cannot be known. She should not have been subjected to the chances of a hair-breadth escape.

There are several other incidents of the occasion, which support the conclusion stated. The respondents were, I believe, a little eastward of the middle of the channel; certainly as far eastward as the middle. Without considering the legal question raised, running there in the com-

mon path of upward bound vessels, especially at night, tends to show a careless disposition of mind. There was an abundance of water for nearly half a mile westward, and the chances of encountering vessels there was much less. When the schooner was sighted the respondents kept their course without diminution of speed, until the vessels were quite near together, and then did nothing but sound a warning, which one of their witnesses says signifies, "Get out of the way," but which the schooner supposed, from what she saw, signified "Go westward." They say the signal was not sounded until the schooner had turned, and was crossing her bows. I believe they are mistaken; and that it was just before, as the schooner's witnesses say. If she was then crossing their bows, they should and doubtless would have reversed their engine, instead of signaling, or have done both. Of course much testimony may be found in the case to support a different conclusion. It is, however, opposed by an equal amount entitled to at least equal credibility, and is also opposed by the inferences, generally, arising from surrounding circumstances.

I have not overlooked the fact that the witness Beers, who was on the tug Hughes, (half a mile, and probably more, behind the respondents,) —supposed to be an impartial witness,—undertakes to define the location and course of the schooner, as well as of the respondents; and that in doing so he contradicts the schooner's witnesses. I am unable, however, to place entire confidence in his statements. His situation, the distance away, the intervening objects, and the hour, were not favorable to correct observation. Furthermore, it is quite clear that he did not see the schooner, (and, judging by the distance at which the parties involved were able to see each other, he could not see her,) until the collision was imminent; or is it probable that he would have felt any interest in noting her situation or course at such a distance, nor until impending danger roused his curiosity, if he had seen her.

The responsibility of the bark arises out of her connection with the tug, together with the fact that her pilot was in charge of both vessels. I attach no importance to the faults of steering imputed to her, nor her failure to cut the hawser.